TDS PAINTING AND RESTORATION, INC. *v.* COPPER
BEECH FARM, INC.

JOHN M. RUDEY *v.* TDS PAINTING AND
RESTORATION, INC.

(AC 15929)

Lavery, Landau and Schaller, Js.

Argued February 18—officially released July 22, 1997

*Alfred U. Pavlis,* for the appellant-appellee (plaintiff in the first case, defendant in the second case).

*Scott R. Lucas,* for the appellees-appellants (defendant in the first case and plaintiff in the second case).

*Opinion*

SCHALLER, J. This appeal involves a contractual dispute between TDS Painting and Restoration, Inc. (TDS), and Copper Beech Farm, Inc. (Copper Beech), regard-

ing painting and restoration services performed by TDS for Copper Beech. Two civil actions arising from the dispute were consolidated for trial. In the first case, TDS brought an action against Copper Beech in which it sought to foreclose a mechanic's lien in the amount of $57,894.71 for painting services together with interest, attorney's fees and costs. Copper Beech denied the allegations in TDS' complaint and filed a four count counterclaim alleging breach of contract, negligence, trespass arising out of lead paint deposited by TDS in the soil surrounding the residence and violation of the Home Improvement Act, General Statutes § 20-418 et seq.,[1] with a resulting per se violation of Connecticut's Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In the second case, John M. Rudey brought an action against TDS in which he repeated the substantive allegations of Copper Beech's counterclaims and alleged that he, not Copper Beech, was the contracting party with TDS. The cases were consolidated and tried before an attorney trial referee pursuant to Practice Book § 430.

The attorney trial referee found the following facts. Copper Beech consists of fifty acres of real property with a number of buildings located on Long Island Sound at Mead Point in Greenwich. Copper Beech, which acquired the property in 1982 for $7.55 million, is a corporation owned entirely by John M. Rudey and his wife. Rudey is the president of Copper Beech and his wife is the secretary. In December, 1982, Rudey individually entered into a ten year lease with Copper Beech, under which the main residence on the property was leased to be used "as a living place for John M. Rudey and Family." The Rudeys, whose permanent residence is in New York City, use the Copper Beech prop-

---

[1] It is undisputed in this case that TDS was not registered as a home improvement contractor until October 31, 1991, after the dispute with Copper Beech arose.

erty as a summer home and occasional retreat. The lease was not an arm's length or market transaction, but rather was used to reimburse Copper Beech for many of the costs associated with Rudey's use.

In early 1991, Rudey wanted to have the main house on Copper Beech painted and restored. Rudey called Donald Freitag, president and owner of TDS, to discuss the proposed project. In mid-February, 1991, Freitag and Rudey discussed the scope of the job, the price and certain precautions that TDS would take. Before any contract was signed, TDS began work on the project at Rudey's request.

In February, 1991, a written contract was executed by both parties. The contract is in the form of a proposal submitted to "Mr. John [Rudey] Copper Beech Farm Inc." The contract specifies that work areas "will be covered thoroughly and cleaned up daily." There is no maximum price for the work to be performed under the agreement, but rather an estimate that the labor will range from 250 to 500 "man hours" per week, which would be billed bimonthly.

TDS performed the work under the agreement for several weeks and submitted invoices to Copper Beech, which were paid with certain adjustments. Several disputes arose during the course of the job, including complaints by Joseph Blank, a horticulturist who resided at the farm and managed it for Copper Beech. Blank complained that TDS' employees were littering the property and taking long and unjustified breaks. These issues were discussed by Rudey and Freitag. By April, 1991, the job had advanced considerably but was not yet completed, and the total cost had already exceeded $25,000. Rudey and Freitag discussed a supplemental agreement, designed to expand the scope of TDS' work and also to address the additional costs to be incurred on the project. This supplemental contract, dated April

25, 1991, was also on a time and materials basis and stated that "all the above costs are estimates only and will be billed for the actual labor hours and materials used."

Copper Beech paid the invoices submitted to it through June 16, 1991. TDS continued its work until the first week of August, 1991. At some point between mid-June and August, Rudey informed TDS that he believed that the April 25 contract had a fixed ceiling, which had been exceeded, and he refused to make any further payments. Rudey also told TDS that he believed that it was responsible for extensive damage to the Copper Beech property and therefore was entitled to no additional sums. Negotiations between the parties were not fruitful, and this litigation ensued.

The attorney trial referee made the following additional findings and conclusions:[2] (1) TDS' contract was with Copper Beech, not Rudey, and, therefore, TDS had sued the right party; (2) TDS did not prove that Copper Beech acted in bad faith, an exception to the provision in Home Improvement Act prohibiting recovery by an unlicensed home improvement contractor; (3) TDS is entitled to recover from Copper Beech because Copper Beech's property is commercial in nature and, therefore, exempt from the provisions of the Home Improvement Act; and (4) Copper Beech in its counterclaim, and Rudey in his complaint, failed to prove that TDS was negligent in rendering its painting and restoration services. Accordingly, the attorney trial referee recom-

---

[2] The attorney trial referee issued a report dated February 7, 1995. He also issued rulings on proposed findings of fact and conclusions of law submitted by Copper Beach and Rudey dated February 7, 1995. The referee stated in the opening paragraph of his rulings, however, that "[r]ulings on each of the proposed findings and conclusions are set forth below, but the report rendered on this date provides clarification and explanation of these rulings and should be considered as incorporated in the following rulings by reference as appropriate."

mended that judgment be rendered in favor of TDS on its complaint, against Copper Beech on its counterclaim and against Rudey on his complaint. Moreover, the referee recommended that TDS was entitled to recover for the balance due on its written agreements with Copper Beech, and for its extras, in the total amount of $57,894.71, but recommended denial of an award of prejudgment interest to TDS.

Copper Beech and Rudey filed a motion to correct the referee's report pursuant to Practice Book § 438. In response, the referee filed a supplemental report in which he denied the substance of the motion to correct, but modified his recommendation as to TDS' recovery. As modified, the referee's recommendation stated that TDS was entitled under count one to the amount due under the written contracts, but not with respect to the extra services performed by TDS at the oral request of Copper Beech.[3] Prior to the hearing before the attorney trial referee, TDS and Copper Beech had signed a stipulation that the trials of the two consolidated cases would be bifurcated and that the issue of attorney's fees would be addressed at a separate posttrial hearing. After the attorney trial referee issued his initial report and recommendation for judgment, he held a hearing on TDS' application for $120,000 in legal fees and $20,000 in costs. After the hearing, he recommended an award of $84,000 for TDS' counsel.

Subsequently, Copper Beech and Rudey filed exceptions and objections to the referee's report pursuant to Practice Book §§ 439 and 440. On March 4, 1996, the trial court, after reviewing the attorney trial referee's record and report, issued its memorandum of decision.

---

[3] TDS claimed that it was owed $33,925 for the extra services performed outside the scope of the written contract. The referee's recommendation, excluding these extra services, was that TDS was entitled to recover under count one for the balance on its written agreements with Copper Beech in the total amount of $23,969.71.

In its decision, the trial court (1) accepted the attorney trial referee's conclusion that Copper Beech, not Rudey, was the contracting party and hence a proper defendant, (2) accepted the attorney trial referee's conclusion that Copper Beech did not exhibit bad faith as required to excuse or negate a violation of the Home Improvement Act, (3) *rejected* the attorney trial referee's finding that the Copper Beech property was commercial in nature and, hence, his conclusion that TDS was exempt from the provisions of the Home Improvement Act, and (4) accepted the attorney trial referee's conclusion that Copper Beech and Rudey failed to prove that TDS acted negligently in rendering its painting and restoration services. Accordingly, the trial court rendered judgment in favor of Copper Beech with respect to TDS' complaint and in favor of TDS with regard to Copper Beech's counterclaim, and rendered judgment in favor of TDS on Rudey's complaint. TDS filed a motion to vacate, or in the alternative, to reconsider the trial court's decision. Copper Beech and Rudey filed a motion to modify the decision. On April 12, 1996, the trial court issued a supplemental decision addressing the parties' motions. In its supplemental order, the trial court denied TDS' motion to vacate or for reconsideration and modified its original judgments to reflect TDS' per se violation of CUTPA.[4] This appeal followed.[5]

---

[1] Because the trial court found that TDS' actions had violated the Home Improvement Act, it was thus bound to render judgment for Copper Beech and Rudey on their CUTPA claims. See *Woronecki* v. *Trappe*, 228 Conn. 574, 579, 637 A.2d 783 (1994) (because plaintiff's actions violated Home Improvement Act, court bound to render judgment for defendant with respect to CUTPA count of counterclaim); *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343, 576 A.2d 464 (1990) (concluding that failure to comply with Home Improvement Act "is a per se violation of CUTPA by virtue of General Statutes § 20-427 (b), which provides that any violation of the Home Improvement Act is deemed to be an unfair or deceptive trade practice").

[5] In the first case, the trial court rendered judgment for Copper Beech on TDS' complaint, for TDS on counts one through three of Copper Beech's counterclaims, and for Copper Beech on count four of its counterclaim.

# I

## APPEAL

TDS appeals from the trial court's judgment rendered in favor of Copper Beech. On appeal, TDS claims that the trial court improperly (1) rejected the attorney trial referee's finding that the Copper Beech property was commercial in nature, (2) refused to find that Copper Beech acted in bad faith and therefore refused to remand the case to the attorney trial referee to determine damages on its bad faith claim, and (3) reversed the referee's report and findings and thereafter denied its motion for consideration without first granting it an opportunity to be heard. We reverse the judgments of the trial court.

### A

TDS claims first that the trial court improperly rejected the attorney trial referee's finding that the Copper Beech property was commercial in nature and, hence, his conclusion that TDS was exempt from the provisions of the Home Improvement Act.[6] We agree.

Procedures before attorney state trial referees are governed by Practice Book §§ 434 through 444. Attorney trial referees are empowered to hear and decide issues of fact. *Spears* v. *Kerars Realty Co.*, 171 Conn. 699, 702–703, 372 A.2d 121 (1976). The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts

---

The court then ruled that TDS recover of Copper Beech $0 damages and $0 costs, taxed at $0, and that Copper Beech recover of TDS $0 damages and $0 costs, taxed at $0.

In the second case, the trial court rendered judgment for Rudey on counts one through three and for TDS on count four. The court then ruled that Rudey recover of TDS $0 damages and $0 costs, taxed at $0.

[6] General Statutes § 20-419 (4) provides in pertinent part: " 'Home improvement' does not include . . . (C) the sale of goods or services furnished for commercial or business use or for resale . . . ."

found by the attorney trial referee. *Dills* v. *Enfield*, 210 Conn. 705, 713, 557 A.2d 517 (1989).

In this case, the trial court concluded, *based on the facts found by the referee*, that the Copper Beech property was residential rental property, and hence the Home Improvement Act was applicable.[7] Although it is well established that the trial court, as the reviewing authority, may render whatever judgment appropriately follows, *as a matter of law*, from the facts found by the attorney trial referee, a trial court cannot find additional facts or reject others unless a material fact has been found without evidence. Id., 713–14. Because the determination as to whether a particular property is commercial in nature for purposes of the "commercial exception" to the Home Improvement Act is a factual determination, and not a matter of law, we conclude that the trial court improperly invaded the referee's fact-finding province. See *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.*, 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990) ("reviewing authority may not substitute its findings for those of the trier of the facts"). Having concluded that the determination of the nature of the property was factual, we must determine on appeal whether the referee's finding that the property was commercial in nature was clearly erroneous. Practice Book § 4061; *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988). To determine whether the attorney trial referee's finding was clearly erroneous, we must determine if it was supported by the evidence. If there is evidence to support it, the finding is not clearly erroneous. *Stamford* v. *Kovac*, 36 Conn. App. 270, 274–75, 650 A.2d 626 (1994).

---

[7] See Public Acts 1993, No. 93-215, § 2, expanding the definition of home improvement in the Home Improvement Act to include work performed on residential rental property.

In considering the nature of the property in question in this case, the attorney trial referee found that the testimony of Copper Beech's witnesses made it clear that the entire property, including the main residence, was operated as a business venture. He found that Copper Beech elected to allow its shareholders and officers to utilize a valuable residence on the premises without consideration of its market value. He further found that the property was a corporate benefit extended to its shareholders and officers for corporate purposes, not unlike fringe benefits or other perquisites issued by corporations. In addition, he found that a large corporate staff and corporate equipment were utilized not only in tree farming activities but also in enhancing the residence for the private enjoyment of its shareholders, a benefit of considerable value that did not take the form of an ordinary dividend. The attorney trial referee found that the residence at issue was operated as an integral part of the business to which the entire property was devoted, notwithstanding that a conventional profit motive clearly did not drive the affairs of Copper Beech. Finally, the attorney trial referee found that improvements to the main residence enhanced the business of Copper Beech and that TDS was entitled to believe that it was dealing with a business enterprise. Accordingly, the referee determined that the provisions of the Home Improvement Act were not applicable.

On the basis of our review, we conclude that there is evidence to support the referee's finding that the Copper Beech property was commercial in nature for purposes of the commercial exception to the Home Improvement Act. Applying the law to the referee's findings, therefore, we conclude that the Home Improvement Act does not bar TDS' recovery. As a result of that determination, the trial court's finding of a violation of CUTPA must also be reversed. We must, therefore, remand the case to the trial court with direc-

tion to render judgment in accordance with the recommendations of the attorney trial referee.

## B

TDS claims next that the trial court refused to determine that Copper Beech had acted in bad faith and therefore did not remand the case to the attorney trial referee to determine damages on its bad faith claim. TDS has waived this claim by failing to file a motion to correct any of the facts found by the referee and by failing to file any exceptions or objections to his report. See Practice Book §§ 438, 439, 440; *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 518, 508 A.2d 415 (1986).

## C

TDS claims finally that the trial court improperly rejected the attorney trial referee's report and findings and denied TDS' motion for reconsideration without first granting it an opportunity to be heard. In light of our remand, we need not address this claim.[8]

## II

## CROSS APPEAL

Copper Beech and Rudey cross appeal from the trial court's decision rendering judgment in favor of TDS with regard to Copper Beech's counterclaim, and with regard to Rudey's complaint. They claim that the trial court improperly (1) determined that there was a sufficient basis in the evidence to support the referee's conclusion that they failed to prove that the performance by TDS deviated from acceptable standards in the industry for paint removal, (2) refused to remand the case to the attorney trial referee for further proceedings to

[8] See generally *Stamford* v. *Kovac*, 229 Conn. 627, 630–31, 642 A.2d 1190 (1994), discussing a party's right under Practice Book § 442 to a reasonable opportunity to be heard on its objections and exceptions to the report of an attorney trial referee.

determine the alleged damages suffered by them due to the failure of TDS to comply with the Home Improvement Act and its resulting CUTPA violation, and (3) refused to conduct further proceedings to determine the appropriate award of attorney's fees to be made to them in light of its finding that TDS had violated CUTPA. We determine that Copper Beech and Rudey cannot prevail on the cross appeal.

Copper Beech and Rudey claim first that the attorney trial referee and the trial court improperly concluded that they failed to prove that TDS deviated from acceptable standards in the industry for paint removal and, therefore, concluded that TDS was not liable for the lead contamination of the soil on the Copper Beech property. We are not persuaded.

The attorney trial referee found that Copper Beech and Rudey had not sustained their burden of proving that TDS had deviated from acceptable standards in the industry for paint removal. In making that determination, the referee heard testimony from Freitag, TDS' foreman Chris Gaffney and Scott Teed of Classic Restorations to the effect that TDS took extensive precautions to contain the paint, dust and chips through the use of tarpaulins and other coverings. He also considered written communications from Freitag to Rudey that corroborated that TDS' employees devoted considerable time to using tarps and cleaning up. Moreover, the referee considered that no witnesses provided evidence that precautions were taken in 1991 by painters that would have been more effective than those utilized by TDS, or that TDS did not use reasonable measures to control paint dust. On the basis of this evidence, the attorney trial referee found that "the evidence does not support the conclusion that the lead found in the soil following the TDS project was attributable to a breach

by [TDS] of any contractual responsibility to [Copper Beech] arising out of the written agreements, or from a want of due care."

After reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for TDS on both Copper Beech's counterclaim and on Rudey's complaint. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found. *Bruno* v. *Civil Service Commission*, 192 Conn. 335, 344, 472 A.2d 328 (1984); *Romano* v. *Derby*, 42 Conn. App. 624, 628, 681 A.2d 387 (1996). We conclude that the trial court properly accepted the attorney trial referee's report as it applied to those claims.

Copper Beech's and Rudey's second and third claims on cross appeal involve claims that TDS violated CUTPA. Because we conclude that TDS is exempt from the provisions of the Home Improvement Act in this case, Copper Beech and Rudey cannot recover on the theory of a per se violation of CUTPA.[9]

The judgments are reversed and the case is remanded with direction to render judgment consistent with the report of the attorney trial referee.

In this opinion the other judges concurred.

---

[9] We note that the practical effect of reversing the trial court's judgments on the CUTPA claims is negligible given the trial court's conclusion that Copper Beech and Rudey did not suffer any damages by virtue of TDS' CUTPA violations.