[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a dishonored check and the rights of a holder in due course. The plaintiff, City Check Cashing, Inc. (City Check), is a licensed check casher. In the first count of its two-count complaint, the plaintiff alleges that on or about May 14, 1992, the defendant, Westport Pool, Inc., as maker or drawer, delivered a check for $1,250, drawn on its account at Connecticut National Bank, to Nick Adams Roofing. The plaintiff further alleges that Nick Adams Roofing endorsed the check to the plaintiff, that plaintiff paid Nick Adams Roofing the face amount of the check less its fee, and that Connecticut National Bank dishonored the instrument and refused payment because the defendant had put out a stop-payment order. The second count repeats the allegations of the first count, but is directed against the principal officer of the defendant, Roy Dinan, who signed the check in question. Westport Pool, Inc. and Dinan are hereafter referred to as the defendants.
The defendants filed an answer denying the material allegations of the complaint and five special defenses: (1) the plaintiff was negligent in accepting the check after having been notified by defendant not to do so; (2) the plaintiff neglected to verify that the defendants had issued a stop-payment order; (3) the defendants had issued a stop-payment order, and had so advised the plaintiff before it cashed the check in question; (4) the defendants had the right to stop payment on the check pursuant to General Statutes § 42a-4-303; and (5) the check in question should be paid by Nick Adams Roofing as endorser pursuant to General Statutes § 42a-3-415(a).
This case was referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General Statutes §52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then submitted a report finding the following facts: (1) the plaintiff verified the identity of Nick Adams before accepting his endorsement of the defendants' check; (2) the plaintiff had previously cashed checks for Nick Adams Roofing without any problems; (3) before cashing the defendants' check, the plaintiff did make several attempts to contact the defendants, but was unsuccessful; (4) it was the defendants' practice to pay contractors such as Nick Adams Roofing with its checks so that it could stop payment if their work was unsatisfactory; (5) the defendants instructed Connecticut National Bank to stop payment of the check in question; and (6) the plaintiff paid the amount of the check to Nick Adams Roofing CT Page 7851 on May 14, 1992, but did not learn of the stop-payment order until May 21, 1992.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff acted reasonably in connection with its processing of the defendants' check; (2) the plaintiff was a holder in due course and had recourse against the maker of the check, the defendants, as well as the endorser; (3) the defendants did not have a good faith reason to stop payment of their check because they had not yet determined that the work performed by Nick Adams Roofing was deficient; (4) the defendants had failed to prove any of their special defenses; and (5) because the check was drawn on a corporate account, the defendant Dinan, as drawer of the check, is not personally liable to the plaintiff on account of General Statutes §42a-3-402(c). The referee recommended that judgment enter in favor of the plaintiff against the corporate defendant for the face amount of the check, $1,257, plus prejudgment interest from May 21, 1992, the date when the money would have been credited to its account, and a reasonable attorney's fee and costs pursuant to General Statutes § 52-251a, because the defendants had transferred the case from the small claims court to the regular docket.
The defendants, pursuant to Practice Book § 438, moved to correct the referee's report as follows: (1) Dinan, on behalf of the corporate defendant, had advised the plaintiff not to cash the check for Nick Adams Roofing before the plaintiff actually did so; (2) the plaintiff was not a holder in due course because the plaintiff had been advised not to cash the check because Nick Adams Roofing had breached its contract with the defendants; (3) pursuant to General Statutes § 42a-3-415, only Nick Adams Roofing, as an endorser, was liable to the plaintiff; (4) the maker of a check, such as the defendants, is not obliged to have a good faith reason to stop payment thereof; and (5) the plaintiff was not entitled to either prejudgment interest or attorney's fees.
In response to the motion to correct filed by the defendants, the attorney trial referee declined to change his recommendation that judgment enter in favor of the plaintiff. The referee noted in his supplemental report that: (1) when the plaintiff cashed the check it had no reason to suspect or know that Nick Adams Roofing had breached its contract with the defendants; (2) the defendants were unable to demonstrate that the endorsement by CT Page 7852 Nick Adams of the check made payable to Nick Adams Roofing was unauthorized; (3) the plaintiff cashed the check "at least one hour" before it knew of the stop-payment order;[1] and (4) the plaintiff was a holder in due course as defined by General Statutes § 42a-3-302 (1) because, based on the information in its possession at the time it cashed the check, it had no knowledge that the instrument had been dishonored or that there was a defense against said check.
The defendants did not file exceptions to the report as authorized by Practice Book § 439, but did, however, file objections to the report pursuant to Practice Book § 440. In these objections, the defendants contend that: (1) the plaintiff was not a holder in due course, but rather simply a holder; (2) when the defendants stopped payment of its check, they knew of the deficiencies in the work performed by Nick Adams Roofing; (3) only the endorser of the check, Nick Adams Roofing, and not the defendants as drawers, was liable to the plaintiff; and (4) the plaintiff was not entitled to interest or attorney's fees.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated in Elgar v. Elgar, 238 Conn. 839, 848-49,679 A.2d 937 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See alsoTDS Painting and Restoration, Inc. v. Copper Beach Farm, Inc.,45 Conn. App. 743, 751, ___ A.2d ___ (1997).
Thus, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id.
The second task is to ascertain whether "the conclusions drawn CT Page 7853 therefrom were legally and logically correct." Id. As stated inRomano v. Derby, 42 Conn. App. 624, 628, 681 A.2d 387 (1996), "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant."
Because the defendants did not file exceptions to the report, the referee's factual findings must stand uncorrected. "[F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic Convalescent Hospital, Inc., 7 Conn. App. 364, 367, 508 A.2d 829
(1986); Practice Book § 439.
Moreover, as to the filing of objections by the defendants, "[s]ection 440 . . . cannot be used to attack findings of fact."Iroquois Gas Transmission System v. Mileski, 43 Conn. App. 47,52, 682 A.2d 140 (1996). "Absent . . . [an] exception to the report, the trial court, in ruling on the objection, [is] limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." (Internal quotation marks omitted.) Id., 51.
The referee found as facts that the plaintiff acted reasonably in cashing the defendants' check for Nick Adams Roofing, and that it did so before being advised by the defendants that they were stopping payment on the check. These findings pertain to facts which this court is not authorized to overturn in the absence of exceptions being filed. The conclusion that the plaintiff was a holder in due course follows legally and logically from those facts. General Statutes § 42a-3-302(1).
Therefore, judgment is entered in favor of the plaintiff on the complaint against the defendant Westport Pool, Inc. only, in the amount of $1,250. plus prejudgment interest of 10% per year pursuant to General Statutes § 37-3a, from May 21, 1992 to the date of this judgment, in the amount of $651.33, plus attorney's fees and costs to be calculated pursuant to General Statutes § 52-251a, at a hearing scheduled for Monday, August 11, 1997, at 2:00 p. m., 123 Hoyt Street, Stamford. CT Page 7854
So Ordered.
Dated at Stamford, Connecticut, this 28th day of July, 1997.
William B. Lewis, Judge