[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff, Premier Capital, Incorporated, as assignee of a promissory note, brought this action for nonpayment against the Defendants, David S. Grossman and Myma S. Grossman. The principal amount of the note is $10,000. The Plaintiff's claim is for principal, interest, costs and associated attorney's fees.
The Defendants admitted only their residence address and denied every other allegation. They asserted two special defenses: (1) the statute of limitations, and (2) that Plaintiff was not a holder in due course. They also claimed recoupment for shares of stock allegedly given the original lender, Brookfield Bank, as security for their loan and asserted ownership of these shares. Further, the Defendants made a claim for a setoff for legal services they claimed they performed for Brookfield Bank and for the Federal Deposit Insurance Corporation (FDIC) after it took over the bank.
The case was referred to Attorney Fact Finder Kim E. Nolan in accordance with General Statutes § 52-549n and Practice Book §23-53. The Fact Finder conducted a trial on March 21, 2000, and submitted a report pursuant to Practice Book § 23-56, finding the following facts:
 1. On April 14, 1992, Defendants executed and delivered to Brookfield a promissory note (the "Note") in the original principal amount of $10,000.00, payable on demand, with interest. The Note also provided for attorney's fees and costs incurred for collection of the Note. The Note was secured by a security interest in shares of General Electric Stock. (Plaintiff's Exhibit A-1)
 2. The interest rate on the Note was at the initial CT Page 14433 rate of nine percent (9%) which was effective from April 14, 1992 until May 1, 1992, when the interest rate became variable. The rate of interest commencing on May 1, 1992, and for each month thereafter, was to be 2.5 percentage points above an index, which was defined as the rate published in The Wall Street Journal, Eastern Edition, on the first day of each month.
 3. The Defendants never made any payments of principal or interest under the Note.
 4. On or about May 8, 1992, Brookfield Bank failed and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver.
 5. On or about May 8, 1992, the FDIC took possession of certain assets and liabilities of the Bank which included the Note.
 6. On April 21, 1994 the FDIC, through an account officer Sandra A. Boutin ("Boutin"), wrote a letter to Defendants advising them that as of that date, the total amount due and owing the FDIC under the Note was $11,673.42, allocated $10,000.00 to principal and $1,673.42 to interest. The letter also requested Defendants to execute and forward five (5) stock powers for the five stock certificates held by the FDIC. The Defendants received this letter. (Plaintiff's Exhibit D)
 7. On April 29, 1994, in response to Boutin's letter, Defendant David S. Grossman wrote back to Boutin and requested a breakdown of the certificate numbers and the number of shares represented by each certificate "in order to fill in before signing stock power." (Plaintiff's Exhibit E)
 8. On June 24, 1994, the FDIC, through Boutin, sent Defendants a certified letter, as a follow up to its April 21, 1994 letter, requesting the signed stock powers so the collateral could be negotiated and the proceeds applied to the outstanding balance on the Note. The defendants received this letter. (Plaintiff's Exhibit F)
 9. The Defendants did not forward the stock powers to CT Page 14434 the FDIC.
 10. The Note was assigned to Plaintiff by the FDIC, together with the collateral securing the Note, on June 26, 1996.
 11. On or about August 1, 1996, Plaintiff sent a certified letter to Defendants, demanding payment of the outstanding balance due on the Note as of that date in the amount of $14,409.33, allocated $10,000.00 to principal and $4,409.33 to interest. Defendants received this letter. (Plaintiff's Exhibit G)
The Attorney Fact Finder concluded, on the basis of the above findings of fact, that:
 12. The Note' is not a negotiable instrument however it evidences a valid obligation of a debt owed by Defendants to Plaintiff.
 13. The debt is found to be $18,100.20 as of March 20, 2000, allocated $10,000.00 to principal and $8,100.20 interest. (Plaintiff's Exhibit H)
 14. Plaintiff is entitled to reasonable attorney's fees found to be $6,375.00, plus cost as may be taxed by the Court.
 15. As to Defendants' claim for set off for legal services performed by Defendant David S. Grossman, Defendants failed to meet their burden of proof. Even assuming Defendant David S. Grossman's testimony as to legal services performed for Brookfield and the FDIC is true, and the fact finder has no reason to doubt it as true, Defendants failed to present sufficient evidence to substantiate the legal work performed. Therefore, the fact finder can only speculate on the time spent, amount charged, and reasonableness of the charges.
 16. Defendants did not sustain their burden of proof on special defense one or two.
 17. Defendants did not present sufficient evidence to prevail in their claim of recoupment.
He recommended that judgment enter for the Plaintiff in the amount of CT Page 14435 $18,100.20, attorney's fees of $6.375, and costs. The Fact Finder further recommended that judgment should enter for the Plaintiff and against the Defendants on the Defendants' claims for setoff and recoupment.
On September 29, 2000, the Defendants filed an objection to the Attorney Fact Finder's report. The Defendants' objections may be summarized as follows: (1) the records of the debt produced at the trial were inadmissible hearsay; (2) the Plaintiff failed to prove that a debt existed; (3) the Attorney Fact Finder incorrectly shifted the burden of proof to the Defendants to prove setoffs; (4) the collection notice did not comply with the Fair Debt Collection Practice Act; (5) the Attorney Fact Finder incorrectly determined that the Defendants failed to meet their burden of proof regarding the setoffs; (6) the legal fee award was excessive; and (7) the Defendants should receive a credit for the value of the stock given the original lender as security for the loan.
To upset the findings of an Attorney Fact Finder's report, clear error must be shown. "It is axiomatic that [a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [now § 19-17]. . . . This court has articulated that attorney trial referees and fact finders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." (Brackets in original; citations omitted; internal quotations omitted.)Meadows v. Higgins, 249 Conn. 155, 162 (1999); see also Elgar v. Elgar,238 Conn. 839, 848-49 (1996). "The attorney trial referee sits only as a fact finder." National Elevator Industry Pension. Welfare EducationalFund v. Scrivani, 31 Conn. App. 728, 733 (1993), rev'd on other grounds,229 Conn. 817 (1994). The court "cannot find additional facts or reject others unless a material fact has been found without evidence." TDSPainting Restoration, Inc. v. Copper Beech Farm, Inc.,45 Conn. App. 743, 751, cert. denied, 243 Conn. 908 (1997). It is this court's nondelegable duty to render judgment based on the Attorney Fact Finder's report. National Elevator IndustryPension, Welfare Educational Fund v. Scrivani, supra, 733. Therefore, absent clear error, this court must accept the Attorney Fact Finder's findings of fact, but has no obligation CT Page 14436 to accept his determinations. Accordingly, the posture of the court on an objection to an Attorney Fact Finder's report is similar to that of an Appellate Court.
1. Admissability of Bank Computer Records
a. Generally
General Statutes § 52-180 should be liberally interpreted. NewEngland Savings Bank v. Bedford Reality Corp., 246 Conn. 594, 603
(1998). In part, the trustworthiness of such documents comes from their being used for business and not for litigation, and that the business relies on such records. Bell Food Services, Inc. v. Sherbacow,217 Conn. 476, 485-86 (1991).
The witness introducing the document need not have made the entry himself or herself, nor have been employed by the organization during the relevant time period. New England Savings Bank v. Bedford Reality Corp.,
supra, 246 Conn. 603. "In addition, [t]here is no requirement in §52-180 . . . that the documents must be prepared by the organization itself to be admissible as that organization's business records." (Brackets in original; internal quotation marks omitted.) Id.
A bank's business record need not have been made by a bank employee to be admissible. It need only be kept as part of regular course of its business, e.g., periodic progress reports of construction mortgagee's engineer to a bank. Crest Plumbing v. DiLoreto, 12 Conn. App. 468, 476
(1987); see also New England Savings Bank v. Bedford Realty Corp.,
supra, 246 Conn. 603.
The witness introducing the document need not have been employed by the company whose record it is during the relevant time for the record to be admissible. New England Savings Bank v. Bedford Realty Corp., supra,246 Conn. 603. Failure to produce a witness who made the record or who had personal knowledge of the entries on it, and failure to show the unavailability of such witnesses would merely go to the weight of the evidence in the computerized record, but not to admissibility. SKW RealEstate Ltd. Partnership v. Gallicchio, 49 Conn. App. 563, 577-78, cert. denied, 247 Conn. 926 (1998). The witness need only attest that he is familiar with the records of the concern and that the offered record is actually a part of the records of the business. New England Savings Bankv. Bedford Realty Corp., supra, 604.
If the witness is someone familiar with computerized records as a userand is someone with some working acquaintance with the methods by which such records are made, then the witness would qualify as sufficiently CT Page 14437 knowledgeable to testify about such records. American Oil Co. v.Valenti, 179 Conn. 349, 361 (1979); see also New England Savings Bank v.Bedford Reality Corp., supra, 246 Conn. 604. The witness need not personally attest to the accuracy of the information contained in the records. New England Savings Bank v. Bedford Realty Corp., supra, 604.
There is no requirement under § 52-180 that the documents have been prepared by the organization itself to be admissible as that organization's business records. Id., 603. Where the prior owner of the note had a legitimate business duty to provide to the next holder the information used to generate the payment history, the printout of that information was the business record of the present holder. SKW RealEstate Ltd. Partnership v. Gallicchio, supra, 49 Conn. App. 577. To require testimony regarding the chain of custody of such documents, from the time of their creation to their introduction at trial, would create a nearly insurmountable hurdle for successor creditors attempting to collect loans originated by failed institutions. New England Savings Bankv. Bedford Realty Corp., supra, 604.
b. Chain of Custody:
A record is admissible if the offeror establishes that the computer record is its own business record. If part of the data was acquired from another business, as is often the case with records of loan payments, the offeror does not have to lay a foundation concerning the preparation of the data it acquired, but must simply show that these data became part of its own business record. Id.; see also Shadhali, Inc. v. Hinthan,41 Conn. App. 225, 228, cert. denied 237 Conn. 926 (1996).
 The requirements for authenticating a business record are identical to those for laying a foundation for its admissibility under the hearsay exception. "It is generally held that business records may be authenticated by the testimony of one familiar with the books of the concern, such as a custodian or supervisor, who has not made the record or seen it made, that the offered writing is actually part of the records of the business." [2 C. McCormick, Evidence (4th Ed. 1992)] § 219, p. 39; see Rosenberg v. Collins, 624 F.2d 659, 665 (5th Cir. 1980) ("[a]ny person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he [or she] need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records"); Rice v. United States,
CT Page 14438 411 F.2d 485, 488 (8th Cir. 1969) (declining to require testimony of authenticating witness with personal knowledge of creation of record because Federal Business Records Act "`was intended to eliminate the technical requirement of proving the authenticity of records and memoranda by the testimony of the maker'").
New England Savings Bank v. Bedford Reality Corp., supra, 246 Conn. 604.
Our Supreme Court has adopted the rule that authentication does not require proof of the chain of custody:
 Other jurisdictions explicitly have rejected the notion that a proponent must prove a chain of custody
in order to authenticate a business record. The Court of Appeals of New Mexico has held that questions about the accuracy of a document "stemming from a gap in the chain of custody or from possible incorrect entries affect the weight, not the admissibility," of the document. Central Security Alarm Co. v. Mehler, 121 N.M. 840, 918 P.2d 1340, 1350 (App. 1996). Likewise, the United States District Court for the Northern District of Indiana has stated that, "[t]he business records exception to the hearsay rule found in Federal Rule of Evidence 803(6) does not require a showing of chain of custody." Pieters v. B-Right Trucking, Inc., 669 F. Sup. 1463, 1465 (N.D.Ind. 1987); see United States v. Bermea, 30 F.3d 1539, 1574
(5th Cir. 1994), cert. denied sub nom. Rodriguez v. United States, 513 U.S. 1138, 115 S.Ct. 1113, 130 L.Ed.2d 1077, cert. denied sub nom. Garza v. United States, 514 U.S. 1097, 115 S.Ct. 1825, 131 L.Ed.2d 746
(1995) ("any break in the chain of custody goes to the weight of the evidence rather than its admissibility").
 There are persuasive policy reasons for us to adopt such a rule. As the trial court aptly noted in a prior evidentiary ruling below: "[T]his case presents a common difficulty of our present day foreclosure actions. Many banks have gone into receivership and mortgages frequently have been assigned again and again. The original employees handling the loan are not always available or willing to testify.
CT Page 14439 (Brackets in original; emphasis added.) Id., 604-05.
c. Standard of Review:
A determination of whether a document, including a computer generated documents, constitutes a business record is a factual determination, and review is on the basis of abuse of discretion. SKW Real Estate Ltd.Partnership v. Gallicchio, supra, 49 Conn. App. 577. Section 52-180
should be liberally construed in favor of admissibility. New EnglandSavings Bank v. Bedford Reality Corp., supra, 246 Conn. 603. "A trial court has discretion to determine if General Statutes § 52-180 is satisfied, and an appellate court should construe the statute liberally when reviewing an abuse of discretion claim." SKW Real Estate LtdPartnership v. Gallicchio, supra, 49 Conn. App. 577, citing River Dock Pile, Inc. v. OG Industries, Inc., 219 Conn. 787, 794-95 (1991).
d. Documents at Issue:
In the present case, Maimonis, general manager and vice president of the Plaintiff, identified the computer records relating to the loan at issue. (Transcript, pp. 13-28.) He also testified that as part of his responsibilities he was in charge of running the bank, servicing' all loans, and was keeper of records, and that prior to his present position, he had been employed for about 19 years in various positions in the banking industry. (Transcript, pp. 4-5.)
Maimonis, also testified that he was familiar with the Defendants' loan, had reviewed the loan documents, and had actually worked on the file. (Transcript, p. 4.) He identified computer printouts that accompanied the file at the time the Brookfield Bank closed and testified that computer printouts are kept in the ordinary course of the Plaintiff's business. (Transcript, p. 14.) He further testified that it is the business of a bank to keep such documents as part of its loan file and that all the loan documents were provided at the time purchased and were reconciled at the same time. (Transcript, pp. 14-20.)
Maimonis's testimony provided all the foundation required for admission of the computer records under § 52-180 . . . Accordingly, the Defendants' objections regarding the admissibility of the computer records is overruled.
2. Defendant' Motion to Dismiss
At trial, after the Plaintiff rested, the Defendants moved to dismiss claiming that the Plaintiff failed to make out a prima facie case. (Transcript, p. 60.) Contrary to the Defendants' claim, the record CT Page 14440 contained more than sufficient evidence of the existence of the debt including the note and records of both the Plaintiff and the FDIC. (Transcript, pp. 6, 19, 25, 32-38, 46-48, 50-51.) The burden of proof was then on the Defendants to establish their claims for setoffs. Ruscito v. F-Dyne Electronics Co., 177 Conn. 149, 166 (1979) ("[t]he general rule is that the burden of proving a setoff or counterclaim is on the defendant. . . . A defendant prevails on a counterclaim not by reason of the weakness of the plaintiff's case, but because of the strength of his own." (Citation omitted.)). The Attorney Fact Finder made no mistake in the allocation of the burden of proof. Accordingly, this objection to the Attorney Fact Finder's report is overruled.
3. Fair Debt Collection Act
The Defendants' claim that the collection notice which they received (transcript, p. 84) did not contain a statement of their rights as required by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692
et seq. (FDCPA) and therefore, because the notice was inadequate, these proceedings are a nullity. (Objection, p. 11 transcript, pp. 83-91.) This argument is one facet of the Defendants' first special defense that this action is barred by the statute of limitations. See General Statutes § 42a-3-118 (b) ("[i]f no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period often years."). The Defendants' claim that the Plaintiff did not comply with the FDCPA when it made its demand in 1996, that failure to comply with the FDCPA renders the demand invalid, that the alleged invalid notice is a nullity and consequently this collection action was not filed within the ten year period specified in § 42a-3-118 (b) and is barred by the statute of limitations.
This claim fails for two reasons. First, by their own admission, the Defendants received a demand letter. All demand letters from the Plaintiff, according to Maimonis, included the required statements of rights. This evidence was sufficient support for the Fact Finder's finding that the Defendants failed to meet their burden of proof on this defense. Second, the purpose of the FDCPA is to provide for civil and criminal liability for unscrupulous debt collection practices and is not intended to provide a defense regarding the validity of the underlying debt. First Federal Bank v. Craco, Superior Court, judicial district of New Haven at Meriden, Docket No. 249553 (April 2, 1996, Silbert, J.) (16 Conn.L.Rptr. 377, 377-78), citing Baker v. G.C. Services Corp.,677 F.2d 775 (9th Cir. 1982). Accordingly, the Defendants' objection to the Attorney Fact Finder's report on this ground is overruled.
4. Defendants' Counterclaim/Setoff Claim
CT Page 14441
The Defendants argue that the Attorney Fact Finder erred in finding that they had not proved their claim for setoffs. (Defendants' objection, p. 12.) David Grossman testified that he performed legal services for Brookfield Bank and for the FDIC, for which he claims he was never paid and more than setoff the value of the note. The Attorney Fact Finder concluded that, "Defendants failed to present sufficient evidence to substantiate the legal work performed." (Report, p. 5.) Nothing in the record requires a change in this conclusion. Accordingly, the Attorney Fact Finder's finding is not clearly erroneous, and the Defendants' objection is overruled. Meadows v. Higgins, supra, 249 Conn. 162.
5. Attorneys Fees
The Defendants object to the amount of attorneys fees awarded to the Plaintiff. The Defendants argue that the court may not rely of the Plaintiff's affidavit of attorney time, charges and expenses. At trial, the Plaintiff attempted to offer testimony on these issues, but the Defendants not only objected but told the court that an affidavit was the only way to proceed. In fact, David Grossman stated:
 Objection. It's not the way you prove attorney's fees. Mr. Moskow [Plaintiff's attorney], at the end of this, is entitled to submit a bill to the Court under an affidavit, and your entitled to consider the validity of it . . . . The only thing [Plaintiff's witness Maimonis] can testify is whether he's paid a bill to date and produce that bill . . . . It'll be up to Mr. Moskow at the conclusion of this to present to the Court an affidavit of his claims. And it'll be up to the judge to determine it's reasonableness.
(Transcript, pp. 48-49.) The Defendants asked the court to follow this procedure, (transcript, p. 50) and they will not now be heard to complain that it was followed or that the Plaintiffs should have done otherwise.
Furthermore, applying the clear error standard of Meadows v. Higgins,
supra, 249 Conn. 162, the court has reviewed the evidence regarding the Plaintiff's attorney fees and concludes that the Attorney Fact Finder's award is reasonable. Accordingly, the Defendants' objection regarding attorney's fees is overruled.
6. Pledged Stock
Finally, the Defendants' claim that "the court erred in not providing a credit to the debtors for the value of the stock obtained by the lender CT Page 14442 [Brookfield Bank] at the time the loan was purchased." The Defendants cite no authority for this argument. The FDIC, the prior holder of this note, tried to assist in the investigation of this issue, but was hampered by the Defendants' lack of cooperation. (Report, p. 3.) Nothing in the record requires findings or conclusions on this question different from those of the Attorney Fact Finder. The Defendants' objection as to a credit against the depreciated value of the stock is overruled.
Conclusion
As no material error has been found, there is no reason to reject the Fact Finder's report. Practice Book § 19-17(a). The Fact Finder's findings, including the findings that the Defendants failed to pay the note as required and that the Defendants failed to prove their claim for setoffs, find support in the record. Therefore, the court accepts the Attorney Fact Finder's recommendations. Accordingly, judgment may enter for the Plaintiff in the sum of $18,100.20, plus attorneys's fees of $6.375, plus costs. Judgment may also enter for the Plaintiff on the Defendants' claims for setoffs and recoupment.
Hiller, J.