[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: (#113) DEFENDANT'S MOTION TO RECONSIDER and (#114) MOTION TO SUBSTITUTE BOND
By their motion (#113) Motion For Reconsideration and Reargument, the defendants have moved the court for reconsideration of its prior decision denying the defendant's motion for discharge of a mechanic's lien placed on certain property of the defendant.
At issue is the court's interpretation of Section 42-158i, as contained in Chapter 742b of the General Statutes which is captioned "COMMERCIAL CONSTRUCTION CONTRACTS."
That statute provides, in relevant part, "(2) `Construction contract' or `contract' means any contract for the construction in this state on or after October 1, 1999, of a commercial or industrial building . . ."
The sections of the statutes contained in Chapter 742b set forth the rights and duties of owners, contractor, subcontractor and suppliers who enter into commercial construction contracts.
The defendants argued that the contract between themselves and the plaintiff is not a "commercial contract" by virtue of the provision in Section 42-158i (1) which states, "Commercial or industrial building shall not be construed to include any building intended for residentialoccupancy or use." (Emphasis added.)
The contract of the parties involves the construction of "Spring Meadows Trumbull" a 148,900 square foot independent and assisted living community situated on 9.2 acres. Evidence submitted permits the court to have found that the cost of the project was 22 million dollars and that it will consist of 150 apartments, 106 independent living apartments and 44 assisted living apartments.
The plaintiff argues that the contract is in fact one for a building that is the type of construction traditionally recognized as CT Page 3413 "commercial," notwithstanding the fact that people may reside in it. In support of that argument, the plaintiff offered into evidence the November 3-9, 2000 edition of the New England Real Estate Journal featuring an article about Spring Meadows Trumbull, complete with photographs and a detailed description of the building and its "amenities." The relevant portions of that exhibit provide the following facts. "The Building includes a library-cafe where residents can enjoy a novel while sipping a freshly made cappuccino from the coffee bar, a pub, an elegant full service dining room with a commercial grade kitchen featuring daily and seasonal specials. Other featured amenities include a computer business center where residents can surf the Internet, e-mail friends and family or keep current on the stock market, as well as several living rooms, multi-purpose room, billiard room and offices for the staff.
"In assisted living the residents will enjoy a library cafe, country kitchen/parlor, wellness center as well as a beautifully appointed living room and full service dining room also featuring daily and seasonal specials." (Plaintiff's Exhibit 1.)
There is no definition of "residence" or "residential occupancy or use" in General Statutes Section 45-158i or anywhere else in Chapter 742b "Commercial Construction Contracts."
Neither plaintiff nor defendant could provide the court with any applicable Connecticut case law or authority for their respective interpretation of "any building intended for residential use or occupancy" as that phrase is used in Section 42-158i (1).
The plaintiff did cite one case dealing with a somewhat analogous issue. In TDS Painting and Restoration, Inc. v. Copper Beech Farm, Inc.,45 Conn. App. 743 (1997), the issue was whether or not the Home Improvement Act was applicable to a certain piece of real property. The trial court rejected a referee's finding that the property was commercial, as opposed to residential, and, hence, exempt from the provisions of the Home Improvement Act.
Upon review, the Appellate Court found that the trial court had improperly rejected that finding when it concluded, based on the factsfound by the referee, that the property was not commercial, but rather it was residential. As a basis for its ruling the court noted, inter alia, that the determination as to whether a particular property is commercial in nature for purposes of the "commercial exception" to the Home Improvement Act is a factual determination, and not a matter of law . . ." Id., p. 751. CT Page 3414
"In considering the nature of the property in question in this case, the attorney trial referee found that the testimony of Copper Beech's witnesses made it clear that the entire property, including the main residence, was operated as a business venture." Id., p. 752.
As a result of the facts so found, the Appellate Court concluded that there was evidence to support the referee's finding that the Copper Beech property was commercial in nature for purposes of the commercial exception to the Home Improvement Act. Id.
This court finds that there was sufficient evidence offered to permit a finding that, notwithstanding the fact that people may purchase or lease living units in Spring Meadow Trumbull, it is essentially a multi-million dollar commercial endeavor and that the contracts between the owners, contractors, subcontractors and suppliers for its construction are, in fact, commercial construction contracts governed by the provisions of General Statutes Chapter 742b.
The prior decision of this court dated August 9, 2002 is reaffirmed.
In a subsequent motion, (#114) Motion For Substitution of Bond, the Defendants, LCOR/JV Trumbull SL, LLC and Tocci Building Corporation, without abandoning their claims that General Statutes Chapter 742b is not applicable to the contracts between the parties, have moved this court for permission to have the aforementioned mechanic's lien released by the substitution of a bond with sufficient surety and upon certain conditions set forth in said motion. It has been expressly represented in the motion that the plaintiff consents to such substitution.
Having considered the relief sought in said motion and noting that it is made with the consent of the plaintiff, the Motion For Substitution of Bond is hereby granted.
 By the Court, Joseph W. Doherty, Judge
CT Page 3415