SKW REAL ESTATE LIMITED PARTNERSHIP *v.*
ANTHONY H. GALLICCHIO ET AL.
(AC 17134)

Foti, Spear and Dupont, Js.

Argued May 4—officially released July 28, 1998

*Richard P. Weinstein*, with whom, on the brief, was *Nathan A. Schatz*, for the appellants (defendants).

*Houston Putnam Lowry*, for the appellee (plaintiff).

### Opinion

DUPONT, J. The defendants[1] appeal from the judgment of strict foreclosure of a mortgage rendered in favor of the plaintiff. On appeal, the defendants claim that (1) the plaintiff failed to offer competent evidence to establish its entitlement to enforce the promissory note secured by the underlying mortgage, (2) the trial court improperly overruled the defendants' special defenses based on the discrepancies between the terms in the promissory note and the terms in the mortgage commitment letter of the lender bank,[2] (3) the trial court

---

[1] The defendants in this case are Anthony H. Gallicchio, Daniel R. Gallicchio, Bhupen N. Patel and P & G Enterprises Limited Partnership. The individual defendants are the partners of P & G Enterprises Limited Partnership.

[2] The discrepancies related to a variance between the rates of interest in the promissory note and the commitment letter. In a separate action, filed in July, 1994, before the institution of this action, the defendants in this case sued the plaintiff in this case for recovery of any money arising from overpayment of interest. *P & G Enterprises Ltd. Partnership* v. *SKW Real Estate Ltd. Partnership*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 94-0539728S. That case is still pending. The claim that the interest was improperly calculated is raised by the defendants in this case in their first special defense, which refers to the pending suit. A second special defense that also refers to the prior case claims that the failure of the promissory note to adhere to the interest rate of the commitment letter is a fraudulent inducement prohibiting recovery on the promissory note, and a third special defense

lacked competent evidence regarding the amount of the debt and (4) the trial court incorrectly rendered judgment for specific items of damages. We affirm the judgment of the trial court as to the first three claims and reverse as to the last claim.

The following facts are relevant to this appeal. On or about April 14, 1987, Home Bank and Trust Company issued a mortgage commitment letter (commitment letter) to the defendant Anthony H. Gallicchio, a partner in the defendant P & G Enterprises Limited Partnership (P & G), indicating that Home Bank and Trust Company had approved P & G's application for a mortgage loan in the amount of $2,100,000, subject to the various terms and conditions as set forth in the letter. On June 10, 1987, Shawmut Home Bank, successor in interest to Home Bank and Trust Company, loaned $2,100,000 to P & G. This loan was evidenced by a promissory note (note) executed by the three general partners of P & G. The note was secured by a mortgage of real property located at 306 Industrial Park Road in Middletown. An assignment of leases and rentals was also executed, and each of the three individual defendants personally guaranteed the note.

Shawmut Home Bank eventually merged into Connecticut National Bank, which changed its name to Shawmut Bank Connecticut N.A. Shawmut Bank Connecticut N.A., now Fleet Bank, transferred the required payments on the loan from P & G's checking account to the bank on a monthly basis. Monthly statements were rendered to P & G reflecting all payments. Shawmut Bank Connecticut N.A. sold the P & G loan to the

alleges unclean hands. The trial court found for the plaintiff on all of the special defenses and expressly ruled that the first special defense was "without merit." We need not discuss the second and third special defenses in this opinion because they have not been briefed, and any issues as to them are deemed abandoned. See *State* v. *Tweedy*, 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991); *State* v. *Rodriguez*, 44 Conn. App. 818, 823, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997).

plaintiff SKW Real Estate Limited Partnership on June 24, 1993. After making monthly payments on the note to the plaintiff for approximately nineteen months with no objection as to ownership of the note, P & G failed to make the payment due on the loan in March, 1995, and thereafter failed to make any further payments. On May 16, 1995, the note was accelerated, and the plaintiff brought this foreclosure action on June 9, 1995. Other facts will be noted as they become relevant.

The trial court held that the plaintiff was a holder in due course for value received and was entitled to enforce the note and mortgage, and that there was a default of payment on the note. The court rendered a judgment of strict foreclosure of the mortgage on April 10, 1997. In a subsequent articulation, the court found the principal amount of the debt to be $1,911,694.71, accrued interest to be $476,420.47, late charges in the amount of $23,474.56 and reasonable attorney's fees of $35,000, and established 12 percent as the applicable rate of interest upon default.

I

The defendants first claim that the plaintiff failed to establish properly its entitlement to enforce the note because the allonge,[3] by which the plaintiff claims to have acquired its right to collect the balance due on the note, was not properly authenticated.

The note in this case is made payable to Shawmut Home Bank, and no endorsement to the plaintiff appears on the note. The plaintiff claims to have acquired its ownership of the note by way of an allonge,

---

[3] An allonge is defined as "[a] piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself. Such must be so firmly affixed thereto as to become a part thereof." Black's Law Dictionary (6th Ed. 1990). The allonge in this case was presented as a plaintiff's exhibit stapled to the original note and making it payable to the plaintiff.

which was attached to the note and admitted into evidence over the defendants' objection. Whether the plaintiff is the proper party to enforce the note and seek foreclosure of the mortgage[4] turns on the admissibility of the note and allonge by which the plaintiff claims to have acquired its interest in the note. If the allonge and note were improperly admitted into evidence, the plaintiff has failed to prove that it is entitled to enforce the note and, correspondingly, would not be entitled to foreclose on the mortgage because of the defendants' failure to pay the note.

The following additional facts are necessary to a proper resolution of this claim. A witness for the plaintiff, Russell Church, testified that he worked as an asset manager for Archon Group, the entity responsible for servicing all of the assets of the plaintiff. In that position, Church testified that he personally became responsible for the P & G loan some time during the summer of 1996. Church further testified that he first saw the original note with the attached allonge two weeks before trial, when the plaintiff's counsel presented it to him, and that he had no personal knowledge regarding the execution of the allonge or how or when it came to be attached to the note.[5] In the upper left corner of the note and allonge are multiple staple holes, indicating that the two documents had been stapled and separated on several occasions prior to trial. The allonge does not, on its face, make any reference to the note, but a computer generated sticker affixed to the upper right corner of the allonge does refer to the defendant partnership.[6] Church testified that he had no knowledge

[4] The assignment of a promissory note evidencing a debt automatically assigns the mortgage deed that secures the debt. *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 266, 708 A.2d 1378 (1998).

[5] The original note was in the possession of the Archon Group as servicer for the plaintiff and was provided to the plaintiff's counsel by other individuals employed by the Archon Group.

[6] The sticker on the allonge reads as follows:
"P0066 — Control #2106

regarding either who attached the sticker or when the sticker was affixed to the allonge.

The defendants objected to the admissibility of the allonge on the ground that Church could not testify as to its authenticity. The trial court admitted the allonge conditionally, indicating that the defendants could move to strike the exhibit if the plaintiff failed to tie the allonge properly to the note. Church testified, over objection, that the loan from P & G was acquired by the plaintiff in 1993 as part of a pool of loans purchased from Shawmut Bank Connecticut N.A. He further testified that he was not an officer or employee of the plaintiff, and that he was not involved in any way with the acquisition of the note from Shawmut. No other documents were introduced into evidence regarding the purchase of the loans. At the close of the plaintiff's evidence, the defendants moved to strike the allonge. The trial court denied the defendants' motion and determined, on the basis of the allonge, that the note was endorsed and delivered properly to the plaintiff, making the plaintiff a holder in due course entitled to enforce the note.

It is undisputed that the defendant P & G borrowed $2,100,000 from Shawmut Home Bank and that P & G executed a promissory note in favor of Shawmut Home Bank. It is further undisputed that P & G has not paid in full the obligation owed on the note and that the outstanding debt remains owed to the legal holder of the note.[7]

---

P and G Enterprises, Limited
6843299914 / 0000000026"

[7] In a pending case; see footnote 2; the defendant, P & G, as plaintiff in that case, alleges in its complaint that "[u]pon information and belief, the [plaintiff in this case] obtained title to said obligation [the note] on June 24, 1993, by assignment from Shawmut Bank Connecticut, N.A., which was the successor to Shawmut Home Bank." The pending case is based on the premise that the plaintiff in this case is the holder in due course of the note.

The plaintiff was in possession of the original note with the endorsed allonge stapled to it. The testimony of Church was that although he was not involved directly with the purchase of the P & G loan by the plaintiff, he became responsible for the servicing of the P & G loan on behalf of the plaintiff at some point after the purchase. The evidence was that the defendants made payments on this note to the plaintiff without objection for nineteen months.[8]

The trial court concluded on the evidence that the plaintiff was a holder in due course. That finding is a question of fact. We must determine whether that conclusion was warranted on the basis of the subsidiary facts of this case. If the finding is not clearly erroneous, it cannot be disturbed.

A holder in due course must prove his taking of the instrument for value, in good faith, and " 'without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.' "[9] *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.*, 187 Conn. 637, 640–41, 447 A.2d 1163 (1982).

---

[8] The trial court found this fact but did not conclude from it that the defendants had waived any right to assert that ownership was not in the plaintiff or that the defendants were equitably estopped to deny the ownership. Neither estoppel nor waiver, both of which are questions of fact, was argued to the trial court, and the trial court did not find either as an ultimate conclusion of fact.

[9] General Statutes § 42a-3-302 provides: "Holder in due course. (a) Subject to subsection (c) and section 42a-3-106 (d), 'holder in due course' means the holder of an instrument if:

"(1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

"(2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 42a-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 42a-3-305 (a).

The defendants claim that the plaintiff is not entitled to enforce the note because the plaintiff has not proved that the note was transferred to it by a delivery, the purpose of which was to give the plaintiff the right to enforce the note. See General Statutes §§ 42a-3-301 (i), 42a-3-201, and 42a-3-203 (b). It is difficult to draw any other inference from the facts here except that the note must have been delivered by Shawmut Bank to the plaintiff, who was in possession of both it and the original mortgage of the original payee. The testimony was that the plaintiff had bought the note. It is reasonable to infer that the note was purchased so that the plaintiff could enforce it by collecting the balance due on it. The sticker affixed to the allonge included the name of

"(b) Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under subsection (a), but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment or claim to the instrument.

"(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.

"(d) If, under section 42a-3-303 (a) (1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

"(e) If (i) the person entitled to enforce an instrument has only a security interest in the instrument and (ii) the person obliged to pay the instrument has a defense, claim in recoupment or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument which, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

"(f) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

"(g) This section is subject to any law limiting status as a holder in due course in particular classes of transactions."

the debtor, and there is nothing in the evidence to indicate that the defendants had executed some other note to Shawmut Home Bank to which *this* allonge had become mistakenly attached.

"The possession by the bearer of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It was for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Citations omitted.) *Garris* v. *Calechman*, 118 Conn. 112, 115, 170 A. 789 (1934).[10] The defendants here did not establish that the title of any holder who negotiated the note to the plaintiff was defective. Here, even without endorsement, when the plaintiff had lawful possession of the note and mortgage, and the defendants made payments according to the terms of the note to the plaintiff for nineteen months, the plaintiff was entitled to enforce the note. See *Warman* v. *Delaney*, 148 Conn. 469, 172 A.2d 188 (1961).

We conclude that the plaintiff has established its standing or right to sue on the note, and that the court correctly admitted the note and its allonge and correctly concluded that the plaintiff was a holder in due course. See *Donnelly* v. *Garvan*, 111 Conn. 626, 630, 151 A. 168 (1930).

## II

The defendants next claim that the trial court improperly overruled their special defenses that were based on the unexplained discrepancies between the terms

[10] We are aware that this case predates the Uniform Commercial Code, but its rationale has not been changed by the code.

of the note and those of the commitment letter.[11] Specifically, the defendants asserted that the note was rendered unenforceable because its interest rate provisions do not accurately reflect the interest rate terms agreed to by the parties and set forth in the commitment letter.

There are two primary differences between the terms of the commitment letter and the terms of the note with respect to the interest rate to be applied to the loan. Both the commitment letter and the note specify that the loan would bear a fixed interest rate of 10 percent per year for the first five years of the ten year term and that beginning in the sixth year and then every year thereafter, the rate would be adjusted to prime plus 2.25 percent per year with a ceiling of 13 percent. The note, however, also provided for an interest rate floor of 10 percent and a yearly cap of 2 percent on the amount the rate could change from the prior year, neither of which were provided for in the commitment letter.[12] There was no evidence before the trial court to

[11] The defendants' special defenses were as follows: "FIRST SPECIAL DEFENSE: The plaintiff sought to wrongfully impose improper interest rate calculations in regard to the alleged debt, all of which is more particularly set forth in a certain case titled, *P & G Enterprises Ltd. Partnership v. SKW Real Estate Ltd. Partnership*, Docket No. CV-94-0539728S, all of which constitutes a breach of the contract between the parties.

"SECOND SPECIAL DEFENSE: The plaintiff sought to wrongfully impose improper interest rate calculations in regard to the alleged debt, all of which is more particularly set forth in a certain case titled, *P & G Enterprises Ltd. Partnership v. SKW Real Estate Ltd. Partnership*, Docket No. CV-94-0539728S, all of the aforesaid was an inducement for the defendants to enter into said transaction with the plaintiff's predecessor in title, and the failure of the plaintiff and the plaintiff's predecessor to adhere to the terms of said interest rate by virtue of the document actually executed represents a fraudulent inducement prohibiting recovery on said note.

"THIRD SPECIAL DEFENSE: The plaintiff is guilty of unclean hands."

[12] The commitment letter provided the following terms with respect to the interest rate: "The loan shall bear interest at a fixed rate of 10.00% for the first 5 years of a 10 year term. At the beginning of the 6th year (Adjustment Date) and every year thereafter, the rate will be fixed at prime plus 2.25% with a ceiling of 13.00% through the tenth (10th) year . . . ."

The interest rate provision of the note provided as follows: "A. From the

explain why the terms of the note varied from the terms of the commitment letter.

The trial court ruled that the defendants' special defense relating to the variance as to the interest rate was "without merit . . . because all parties signed the note, which is evidence of the debt. The commitment letter is not evidence of any debt, but of the parties' general contemplations at the time it was issued. The terms of the note are unambiguous, clear and in accordance with the parties' agreement at the time it was signed."

The terms of the note clearly and unambiguously set forth the interest rate provisions of the loan, including the interest rate floor and rachet. The defendants signed the note without objecting to the interest rate provisions. Although the commitment letter stated that the loan was "subject to the following terms and conditions," those conditions included the preparation of the note and mortgage deed. Further, while the commitment letter provides for the survival of its terms,[13] there is no requirement that the commitment letter contain all of the terms of the loan. In this case, the terms of the commitment letter did survive the closing of the

date hereof through June 9, 1992, the rate of interest payable on this note shall be fixed at 10.00% per annum. . . . B. On June 10, 1992, and on June 10, every one (1) year thereafter (hereinafter referred to as 'adjustment dates') the rate of interest payable on this note shall increase or decrease to a rate equal to two and one-quarter percent (2.25%) above the prime rate in effect at SHAWMUT HOME BANK on the adjustment date. . . .

"Notwithstanding anything contained hereinabove to the contrary: A. The rate of interest payable on this Note, in no event and at no time, shall be greater than thirteen percent (13%) nor less than ten percent (10%) per annum, and the maximum increase or decrease in the interest rate shall not be more than two (2%) percent over the rate of the prior year."

[13] The commitment letter states: "The parties hereto agree that this commitment shall survive the Loan closing, and that each and every one of the obligations and undertakings of Borrower and Guarantors shall be continuing obligations and shall not cease and terminate until the entire Loan has been paid in full."

loan. The note contained additional terms, but did not change the terms of the commitment letter.

"[A] promissory note is nothing more than a written contract for the payment of money" and, as such, contract law applies. *Appliances, Inc.* v. *Yost,* 181 Conn. 207, 210, 435 A.2d 1 (1980). There is no ambiguity in the interest rate terms in the note, and any contrary intent on the part of the parties that could be impliedly construed from the terms of the commitment letter because of the absence of a rate interest floor or the absence of a rate interest rachet cannot alter the terms of the written contract, the note, as it was subsequently executed. See *Greene* v. *Scott,* 3 Conn. App. 34, 36, 484 A.2d 474 (1984).

The defendants' argument that the commitment letter itself constituted a contract between the parties that was breached when the lender charged interest in accord with the terms of the note rather than the terms of the commitment letter is also to no avail. First, the commitment letter clearly anticipated the preparation of further loan documents and was conditioned on the parties' execution of those documents in the future. Second, while the commitment letter authorized the loan to the defendants "subject to the following terms and conditions," there was no requirement that the commitment letter contain all of the terms and conditions regarding the loan or that no other terms could be added. The defendants, who were represented by counsel at the closing, signed the note that unambiguously set forth the interest terms of the loan. The commitment letter provided in paragraph sixteen, titled, "Documentation," that all documents, including but not limited to the mortgage deed and note, shall be "reviewed by borrower's counsel," giving his name and telephone number.

We agree with the trial court that the note is an enforceable contract between the parties, which sets

forth the terms of the agreement of the parties with respect to the interest rate to be applied to the loan, and we therefore affirm the trial court's conclusion that the defendants' special defenses cannot prevail.

## III

The defendants next claim that the trial court lacked competent evidence to determine the amount of the mortgage debt properly. The trial court based its findings regarding the amount of the debt on the following evidence.

The plaintiff offered the testimony of David Stern, an asset analyst with the Archon Group, and introduced through Stern a computer generated document reflecting the amount of the debt. The computer document showed a total outstanding balance as of March 13, 1997, as follows: a principal balance of $1,911,694.17; interest owed of $436,819.47, with a per diem rate of $557.58; and late charges of $23,474.56. Stern testified that the computer generated loan history was prepared in the ordinary course of business, that it was the ordinary course of business to make such records and that it was made contemporaneously with the events described therein. Stern further testified, however, that he was not responsible for the development or input of the computer information, nor was he responsible for supervising the computer input or handling the accuracy of the information. Stern testified that the loan servicing department of the Archon Group is responsible for entering the data into the computer and generating the payment history documents.

The defendants contend that the trial court improperly relied on this evidence to establish the amount of the debt because the evidence lacked proper foundation and was inadmissible hearsay. The trial court overruled this objection as going to the weight of the evidence and admitted the computer generated reconstructed

payment history under the business record exception to the hearsay rule. Under the statutory exception, business records may be admitted into evidence if it is proven that (1) the record was made in the ordinary course of business, (2) it was the ordinary course of the business to make such records and (3) the record was made at the time of the transaction or event or shortly thereafter.[14] It is not necessary for the witness through whom the business records are entered into evidence to have made the actual recordation or to have personal knowledge of the transaction. Rather, "entries in business records must be based either on the personal knowledge of the entrant or on the information of others with personal knowledge who are under a business duty to transmit such information to the entrant." *American Oil Co.* v. *Valenti*, 179 Conn. 349, 358, 426 A.2d 305 (1979) (witness without detailed knowledge of computer generated reports could properly testify records made in ordinary course of business). In assessing the credentials of a witness whose testimony is the foundation for the admission of computer generated business records, our Supreme Court has held that "[w]hat is crucial is not the witness' job

---

[14] The business record exception to the hearsay rule is codified at General Statutes § 52-180, which provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

description but rather his knowledgeability about the basic elements that afford reliability to computer printouts." Id., 360.

It is not improper to admit into evidence an adjustment sheet and computer printout as evidence of the principal due on a note. *Shadhali, Inc.* v. *Hintlian*, 41 Conn. App. 225, 227, 675 A.2d 3, cert. denied, 237 Conn. 926, 677 A.2d 948 (1996). A trial court has discretion to determine if General Statutes § 52-180 is satisfied, and an appellate court should construe the statute liberally when reviewing an abuse of discretion claim. *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 794–95, 595 A.2d 839 (1991).

Stern testified as to all of the statutory requirements for the business record exception to the hearsay rule. He stated that the computer records admitted were generated in the ordinary course of business, that it was the ordinary course of the business of the Archon Group to make such records and that the records were made contemporaneously with the transaction. Although Stern did not have personal knowledge of the generation of the report, he testified that he was familiar with the procedures used to generate the report, that he had conducted an extensive audit of the report to verify the accuracy of the information and that he used such records on a daily basis in his job. Stern further testified that the beginning balance used to generate the report came from the sales agreement between Shawmut Bank Connecticut N.A. and the plaintiff when the note was assigned to the plaintiff, and was in turn provided to the Archon Group in connection with the loan services it provided to the plaintiff. The court reasonably could have concluded that Shawmut Bank Connecticut N.A. had a legitimate business duty to provide the information used to generate the payment history. The failure of the plaintiff to produce a witness who

made the record or a witness who had personal knowledge of recorded payments or to show that such witnesses were unavailable may affect the weight of the evidence. Such failure does not, however, affect the admissibility of the payment history report. General Statutes § 52-180 (b). We conclude that the payment history report was properly admitted into evidence under the business record exception to the hearsay rule.

## IV

The defendants finally claim that even if the trial court did have evidence before it sufficient to establish the amount of the debt, the court's award of interest, late fees and attorney's fees was not supported by the evidence or by applicable law.

## A

The defendants claim that the note in this case does not support the trial court's award of interest. The court applied the applicable interest rates set forth in the note and as indicated on the computer generated loan history, and applied a 12 percent default interest rate as was required by the note. The court determined that the per diem interest charge to be applied was $637.73.

The note in this case has a variable interest rate that is tied to "the prime rate in effect at Shawmut Home Bank on the [annual] adjustment date." Stern testified, however, that he had no knowledge as to whose prime rate was used after Shawmut Home Bank became Fleet Bank and was not certain if it was the prime rate of Fleet Bank. The computer records, however, which were admitted into evidence, do indicate the prime percentage rate that was applied. "When a variable interest rate is based on the rate of a failed institution, the trial court must determine whether the substitute rate is reasonable by examining the documents and testimony

offered by the plaintiff." *Central Bank* v. *Colonial Romanelli Associates*, 38 Conn. App. 575, 578, 662 A.2d 157 (1995); see also *Federal Deposit Ins. Corp.* v. *Keating*, 44 Conn. App. 556, 560, 690 A.2d 429 (1997). In the latter case, there was no evidence as to what interest rate a successor to a failed institution used in calculating the interest and if that rate was reasonable. In *Central Bank*, both the interest rate and its source were known, but there was no evidence that the rate was reasonable. *Central Bank* v. *Colonial Romanelli Associates*, supra, 578–79. Both cases required remands for the proper establishment of a prime rate.

The plaintiff argues that the law regarding an interest rate based on a failed institution does not apply here, where Shawmut Home Bank did not "fail" but merged with another bank. We conclude that this distinction is of no import. After the merger, or name change, the prime rate of Shawmut Home Bank no longer existed. Furthermore, even if the prime rate of the successor institution, Fleet Bank, is the proper rate to be applied, the trial court had no evidence before it that the rate of Fleet Bank was indeed the rate that was applied. In the present case, while the computer generated loan history admitted into evidence provided the trial court with evidence of the rate that was applied to the loan after Shawmut Home Bank merged with and eventually became Fleet Bank, there was no evidence offered regarding which institution's prime rate was applied to compute the variable interest rate and no evidence as to the reasonableness of the rate that was used. Accordingly, the judgment of the trial court must be reversed on this issue and the case remanded to the trial court for a hearing to determine the proper prime rate to be applied to the loan after Shawmut Home Bank ceased to exist.

B

The defendants claim that the trial court improperly awarded late charges after the acceleration of the note.

The trial court found that the plaintiff sent notice of default to P & G on May 16, 1995, declaring acceleration of the note and demanding payment in full. Late charges of $1908.30 had accrued on the note as of May 16, 1995. The trial court, however, awarded the plaintiff late charges in the amount of $23,474.56, which included late charges that had accrued between May, 1995, and the date of trial. In *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 443, 671 A.2d 1303 (1996), and again in *Shadhali, Inc.* v. *Hintlian*, supra, 41 Conn. App. 229–30, we held that a plaintiff may not recover late charges once a promissory note has been accelerated and demand for payment has been made. Given this precedent, and in light of the concession of both parties at oral argument that the trial court's award of late charges should not have included late charges after the acceleration of the note, we conclude that the trial court improperly determined that the plaintiff was entitled to those late charges and order that the plaintiff's award of damages be modified to reflect the reduction of late charges by $21,566.26 to total $1908.30.

C

The defendants claim that the trial court improperly awarded attorney's fees when there was no claim for attorney's fees in the plaintiff's complaint and no evidence with respect to the amount of attorney's fees incurred by the plaintiff presented at trial. The trial court awarded the plaintiff $35,000 in attorney's fees based on the representation of plaintiff's counsel in its posttrial brief.

The note in this case expressly provided for the payment of attorney's fees upon default. Further, the plaintiff's prayer for relief specifically requested "[s]uch other and further relief as this court deems just and equitable." The defendants' claim that the plaintiff's failure to make a specific demand for attorney's fees in its prayer for relief is, therefore, to no avail. We agree, however, with the defendants that the plaintiff failed to

present any evidence at trial to satisfy the " 'undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing.' " *Barco Auto Leasing Corp.* v. *House,* 202 Conn. 106, 121, 520 A.2d 162 (1987); see also *Family Financial Services, Inc.* v. *Spencer,* 41 Conn. App. 754, 771, 677 A.2d 479 (1996). In *Barco,* our Supreme Court specifically held that the plaintiff, who addressed the issue of attorney's fees only in its posttrial brief, and was given no opportunity to address the issue at trial was "denied the undisputed right to litigate fully the reasonableness of the attorney's fees sought by the defendants' counsel." *Barco Auto Leasing Corp.* v. *House,* supra, 121. Likewise, on this record, we conclude that the defendants were not afforded an opportunity to litigate the reasonableness of the award of attorney's fees, and therefore the award must be set aside.

The judgment is reversed only as to the awards of late charges, interest and attorney's fees and the case is remanded with direction to award late charges in the amount of $1908.30, and for further proceedings to determine the proper prime rate to be applied to the loan after Shawmut Home Bank ceased to exist, to make any corrections in the judgment as to interest that might be necessitated by the finding of the proper prime rate and to determine the amount of reasonable attorney's fees.[15]

In this opinion the other judges concurred.

[15] The defendants claimed at oral argument that a new trial, rather than a remand, would be necessary if there was a reversal as to any of the items of damages. In this case, we uphold the liability of the defendants to pay the note, and affirm the judgment of strict foreclosure and the finding as to the amount of the debt. This case does not come within the factual plane of those cases in which a new trial is necessitated because liability is inextricably intertwined with the issue of damages. A hearing as ordered here does not affect the judgment of strict foreclosure, the validity of the note or the amount of the debt, and a new trial is not warranted. See *Wendland* v. *Ridgefield Construction Services, Inc.,* 190 Conn. 791, 462 A.2d 1043 (1983).