[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT(#117)
 I PROCEDURAL HISTORY
The plaintiff, Morequity, Inc., filed an amended complaint on March 12, 1999, seeking foreclosure of a mortgage on property owned by the defendants, Joseph L. Dunn and Jacqueline M. Dunn. The complaint alleges that the mortgage and promissory note were executed on February 2, 1996, CT Page 11242 and were subsequently assigned to the plaintiffs on December 13, 1996. The unpaid balance on the note is allegedly $144,875.34 plus interest, late charges and collection costs. The plaintiff's complaint further alleges that the note and mortgage are presently in default because of nonpayment of the installments of principal and interest due on September 7, 1998 and each and every month thereafter, and that the plaintiff has declared the entire balance due and payable.
The defendants, by way of an amended answer filed on December 22, 1999, admit that they are the owners and are in possession of the property. The defendants deny that the note and mortgage are owned by the plaintiff, that the balance of the note is $144,875.34, and that the note and mortgage are in default. The defendants claim insufficient knowledge as to the other allegations of the amended complaint.
The defendants have also filed four special defenses. These defenses are based on the provision of the mortgage allowing for reinstatement of the mortgage under certain conditions.[1] The first special defense alleges that prior to the commencement of this action, the defendants tendered payment sufficient to cure any alleged default, and that the plaintiff has refused to accept the payment. The second special defense alleges that the defendants tendered payment sufficient to invoke their right to reinstate under the terms of the mortgage, and that the plaintiff refused to reinstate. The third special defense alleges that the plaintiff, in refusing to accept payment, failed to comply with covenants of good faith and fair dealing. In the fourth special defense, the defendants allege that the plaintiff's actions, in refusing to accept payment, make the foreclosure action inequitable and that the plaintiff should therefore be barred from obtaining a judgment of foreclosure.
The plaintiff filed a motion for summary judgment on March 24, 2000, claiming that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. On April 14, 2000, the defendants filed an objection. The parties have filed memoranda of law, as well as affidavits and other documentary evidence in support of their respective positions.
 II SUMMARY JUDGMENT STANDARD
"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the CT Page 11243 evidence in the light most favorable to the nonmoving party." (Citation omitted.) Witt v. St. Vincent's Medical Center, 252 Conn. 363, 368,746 A.2d 753 (2000). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.)Serrano v. Burns, 248 Conn. 419, 424, 727 A.2d 1276 (1999).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Home Ins. Co. v. Aetna Life Casualty Co.,235 Conn. 185, 202, 663 A.2d 1001 (1995). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotations marks omitted.) Pion v. SouthernNew England Telephone Co., 44 Conn. App. 657, 663, 691 A.2d 1107 (1997).
The plaintiff argues that it is entitled to summary judgment because it has established its prima facie case and because the defendants' special defenses are invalid. Summary judgment may be granted in a foreclosure action if the mortgage is in default and the defendants' special defenses are legally insufficient. See Southbridge Associates. LLC v. Garofalo,53 Conn. App. 11, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229
(1999). "Only one of the defendants' defenses needs to be valid in order to overcome the motion for summary judgment." Union Trust Co. v.Jackson, 42 Conn. App. 413, 417, 679 A.2d 421 (1996).
 III PLAINTIFF'S PRIMA FACIE CASE
A prima facie case is established in a foreclosure action if the plaintiff is able to "prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the defendants have] defaulted on the note." Webster Bank v. Flanagan, 51 Conn. App. 733,750, 725 A.2d 975 (1999). The plaintiff has included with its motion for summary judgment the affidavit of Janet Burke, who conducted a title search for the mortgaged property. In her affidavit, Burke states that the property was mortgaged to Security Funding and Leasing Corporation on February 2, 1996 and that the note and mortgage were subsequently assigned to ContiMortgage on February 7, 1996, and assigned to the plaintiff on December 13, 1996. The plaintiff has also submitted copies of the two assignments. The defendants have submitted no evidence demonstrating any question of fact on the issue of ownership.
The plaintiff has also made an adequate showing of a default. The affidavit of Edward Laskowski, Jr., director of servicing for the CT Page 11244 plaintiff, establishes that a default occurred as a result of nonpayment of the installments due on September 7, 1998 and the months thereafter. These facts are not contradicted by any of the defendants' evidence. Because there is no genuine issue of material fact regarding ownership or default, the plaintiff has established its prima facie case. The plaintiff is therefore entitled to summary judgment unless one or more of the special defenses is valid and presents a genuine issue of material fact.
 IV SPECIAL DEFENSES
The plaintiff makes a number of attacks on the defendants' special defenses. First, the plaintiff claims that the special defenses are legally insufficient in that they contain only conclusions, rather than specific facts as required by Practice Book § 10-1. Second, the plaintiff argues that the special defenses are all invalid foreclosure defenses because they fail to address the making, validity or enforcement of the note and mortgage. Third, the plaintiff argues that the defenses are without merit because the defendants never made an adequate tender of payment. For the reasons set forth below, each of the plaintiff's arguments must fail.
 A
The plaintiff first argues that the special defenses contain only legal conclusions, rather than specific facts, and that the court should therefore not consider the merits of the defenses. This argument should correctly be raised by way of a motion to strike.[2] See Practice Book § 10-39. It is true that the appellate courts have permitted the legal sufficiency of pleadings to be attacked by a motion for summary judgment under some circumstances. See Boucher Agency, Inc. v. Zimmer,160 Conn. 404, 409, 279 A.2d 540 (1971); Drahan v. Board of Education,42 Conn. App. 480, 498 n. 17, 680 A.2d 316, cert. denied, 239 Conn. 921,682 A.2d 1000 (1996). Where, however, the pleading deficiency is one which could be cured by the filing of a substitute pleading pursuant to Practice Book § 10-44, it would be inappropriate for the court to decide the issue on a motion for summary judgment, thereby defeating the party's right to plead over. See Bennett v. Lindsay, Superior Court, judicial district of New Haven, Docket No. 389401 (July 6, 1999, Levin, J.), aff'd per curiam, 58 Conn. App. 906, 754 A.2d 219 (2000); Dorvilusv. Donovan, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 157928 (May 26, 1999, D'Andrea, J.); Tirado v. RPIManagement Corp., Superior Court, judicial district of Waterbury, Docket No. 129201 (July 16, 1998, Gill, J.); Gunther v. Maryland Casualty Co., CT Page 11245 Superior Court, judicial district of Fairfield, Docket No. 310959 (January 25, 1996, Levin, J.). Consequently, the court will not consider at this time the plaintiff's argument that the special defenses contain conclusions rather than factual allegations.
 B
The plaintiff also argues that the four special defenses are not valid foreclosure defenses because they do not address the making, validity or enforcement of the note and mortgage. "At common law, the only defenses to an action of [foreclosure] would have been payment, discharge, release or satisfaction . . . or, if there had never been a valid lien." (Citation omitted.) Petterson v. Weinstock, 106 Conn. 436, 441, 138 A. 433
(1927). "In recognition that a foreclosure action is an equitable proceeding, courts have allowed mistake, accident[,] fraud, equitable estoppel, CUTPA, laches[,] breach of the implied covenant of good faith and fair dealing, tender of deed in lieu of foreclosure and a refusal to agree to a favorable sale to a third party to be pleaded as special defenses. . . . Other defenses which have been recognized are usury, unconscionability of interest rate, duress, coercion, material alteration, and lack of consideration. . . . These special defenses have been recognized as valid special defenses where they were legally sufficient and addressed the making, validity or enforcement of the mortgage and/or note. . . . The rationale behind this is that . . . special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action. . . . Further, based on the same rationale, the defenses . . . cannot attack some act or procedure of the lienholder." (Internal quotation marks omitted.) FederalNational Mortgage v. Mallozzi, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 165698 (February 10, 1999, Hickey, J.). The "making, validity or enforcement" standard has been recognized as valid by the Appellate Court. See Southbridge Associates.LLC v. Garofalo, supra, 53 Conn. App. 17.
In the present case, each of the special defenses amounts to a claim that the plaintiff breached its duties under the language of the note and mortgage, thereby depriving the defendants of their right, under paragraph 18 of the mortgage, "to have enforcement of this Security Instrument discontinued. . . ." The judges of the Superior Court have held that special defenses arising from the terms of the mortgage documents themselves are valid defenses in a foreclosure action. SeeAmeriquest Mortgage v. Dunn, Superior Court, judicial district of New London at New London, Docket No. 549002 (June 9, 1999, Martin, J.);Nationsbanc v. Howell, Superior Court, judicial district of CT Page 11246 Stamford/Norwalk at Stamford, Docket No. 164649 (December 16, 1998,Rodriguez, J.); Webster Bank v. Eierweiss, Superior Court, judicial district of New Haven at New Haven, Docket No. 395181 (June 26, 1997,Celotto, J.) (19 Conn.L.Rptr. 627, 629). Because the special defenses in the present case are based on the defendants' reinstatement rights under the mortgage documents themselves, they are not invalid for failing to address the making, validity or enforcement of the mortgage or note.
 C
The plaintiff further argues that the special defenses are invalid because the defendants never adequately tendered payment, and that the defendants are therefore not entitled to reinstatement of the mortgage. As stated above, the four special defenses are based on allegations that, prior to the commencement of this action, the defendants tendered payment to the plaintiff in an amount sufficient to cure the default under the mortgage's reinstatement clause,[3] and that the plaintiff failed to reinstate the mortgage.
In support of their objection to the motion for summary judgment, the defendants have provided the court with the affidavit of the defendant Joseph L. Dunn, copies of correspondence between the defendants and the plaintiff, and copies of checks payable to the order of the plaintiff. In addition, the plaintiff has provided the court with a copy of the original note and mortgage as well as additional correspondence between the parties. This evidence, when viewed in the light most favorable to the defendants, establishes the following additional facts.
Joseph L. Dunn's affidavit states that on or about December 15, 1998, he contacted the plaintiff and requested a "written reinstatement breakdown," which the plaintiff provided to the defendants on or about December 18, 1998. That reinstatement breakdown, a copy of which has been provided by the defendants, claimed that as of January 7, 1999, the defendants would owe $8,829.41. That figure included five monthly payments of $1,327.77 each for the months of September 1998 through January 1999, $265.56 in late fees,[4] and $1,925.00 in attorney's fees and costs. The reinstatement breakdown included a statement that "THE REINSTATEMENT AMOUNT MUST BE PAID IN FULL BY CERTIFIED FUNDS ONLY."
On December 29, 1998, the defendants sent the plaintiff a letter that stated, "I am prepared to pay $6,904.41, which represents the five due mortgage payments and late fees." The letter went on to question the amount of attorney's fees: "I question the attorney fee of $1,925.00. Please provide me with an itemization of the fees claimed as well as the name of the Attorneys involved. I want to see a breakdown of the specific work that you claim your attorney prepared and processed." In response to CT Page 11247 the defendants' inquiry, the plaintiff faxed a letter to the defendants on December 30, 1998. The letter read as follows: "RE: YOUR LETTER DATED 12-29-98. JUST A NOTE TO LET YOU KNOW THAT I RECEIVED YOU REQUESTS. I HAVE FORWARDED THIS TO OUR ATTORNEY MICHAEL REINER TO RESPOND, AS THIS IS IN HIS HANDS NOW."
Without providing any additional information regarding the disputed attorney's fees, the plaintiff filed the present action on January 19, 1999. The sheriff's return indicates that service was made on the defendants on January 15, 1999. On March 18, 1999, the defendant sent another letter to the plaintiff, indicating that they still had not received the breakdown requested in the December 29, 1998 letter. In addition, the defendants sent a check in the amount of $9,559.95. This amount included the five payments and late charges listed in the December 18, 1998 reinstatement breakdown, plus the monthly payments due in February and March of 1999, but did not include the disputed attorney's fees and costs. According to the affidavit of Edward Laskowski, Jr. provided by the plaintiff, this check was returned because it was "insufficient to reinstate the mortgage loan."
Joseph L. Dunn states in his affidavit that he did not receive any response to his requests for a complete breakdown of attorney's fees until April 30, 1999, more than four months after the initial request. The plaintiff has provided a copy of the April 30, 1999 breakdown sent to the defendants' counsel by the plaintiff's counsel. The breakdown reads as follows:
1. Attorney's Fees $750.00
2. Sheriff's Fees 450.00
3. Title Search Fee 150.00
4. Court Entry Fee 185.00
5. Appraisal Fee 350.00
6. Certified Copies 10.00
7. Federal Express 10.00
8. Release of Lis Pendens 10.00
The plaintiff attacks both the form of the defendants' tender, based upon the fact that the funds were not actually delivered to the plaintiff prior to the commencement of this action, and the adequacy of the tender, CT Page 11248 in that the defendants disputed the plaintiff's claim of attorney's fees and costs. "A tender is an offer to pay a debt or discharge a duty, and, in the case of a debt, the offer to pay involves, as a general rule, the actual production of the money and the placing of it in the power of the person entitled to receive it. Sands v. Lyon, 18 Conn. 18, 25 [(1846)]. The formal production of the amount to be tendered is excused, however, by an unequivocal declaration that it will not be received.Ashburn v. Poulter, 35 Conn. 553, 556 [(1869)]; Sands v. Lyon, supra; seeBuonocore v. DeFeo, 76 Conn. 705, 56 A. 510 [(1903)]." Mayron's BakeShops. Inc. v. Arrow Stores, Inc., 149 Conn. 149, 155-56, 176 A.2d 574
(1961).
The facts of the present case are similar to those presented in the case of Ashburn v. Poulter, supra, 35 Conn. 553. In that action, process was first served on a third party, who was a debtor of the defendant. "After the service on the garnishee, and before the service of any copy on the defendant, and within the time allowed by law for such service, the defendant met the plaintiff upon the street . . . and stated to him that he was ready to pay his account, meaning thereby to pay to the plaintiff . . . the amount of the debt. The plaintiff replied, "There have been costs made, and you have got to settle with my attorney No copy of the process was left in service with the defendant until after the above conversation. . . . Upon these facts the defendant claimed that a sufficient tender was made by him to the plaintiff of all that was due him. But the [city] court held that it was not a good tender in form, and that, if good in form, it was insufficient in not tendering the amount of costs made by the service on the garnishee. . . ." Id., 553-54.
The Supreme Court affirmed the Superior Court's reversal of the city court: "Although the production and presentation of the money is ordinarily one of the necessary elements of a lawful tender, it is one the creditor may waive, and . . . the Superior Court was right in holding this tender sufficient. . . . [T]he right of the plaintiff to have the money produced and presented in connection with the offer to pay, was waived, and the production and presentation dispensed with, by the unequivocal declaration that it would not be received, and must be paid to another. . . . [T]he intention of the creditor to refuse the money could not have been more clearly or strongly expressed if he had added, "You need not take out your money, I shall not receive it.' In such a case, it is the intention of the creditor not to receive, intentionally and unequivocally expressed by words or conduct calculated and intended to convince the debtor that presentation is useless, which excuses the actual production or presentation of the money. In this case it is found that the money would have been produced, and the debt paid, if the declaration had not been made; and it is clear that the plaintiff, by an express refusal to receive, intentionally prevented it . . . (Emphasis in CT Page 11249 original.) Id., 555-56.
The present case presents a nearly identical scenario to that inAshburn. In both cases, the defendants offered to pay an amount representing the entire debt but not including alleged costs and/or attorney's fees. In both cases, the plaintiffs responded by informing the defendants that the matter was in the hands of the plaintiffs' attorneys. Furthermore, in the present case the defendants had previously received notice from the plaintiff, in the December 18, 1998 reinstatement breakdown, that it would not accept payment of less than the entire amount it claimed, including attorney's fees and costs. Actually delivering the lesser amount to the plaintiffs would have been a useless act and was therefore unnecessary as a prerequisite to establishing tender. Vachon v. Tomascak, 155 Conn. 52, 57, 230 A.2d 5
(1967); see also the opinion of the Appellate Session of the Superior Court in Singer v. Wong, 35 Conn. Sup. 640, 644, 404 A.2d 124, cert. denied, 176 Conn. 764, 394 A.2d 201 (1978). Under these circumstances, the defendants have produced substantial, uncontradicted evidence that a formally valid tender was made under the rule in Ashburn.
The plaintiff also argues that any tender by the defendants was insufficient because it did not include the costs and attorney's fees requested. In support of this argument, the plaintiff refers to the requirement, contained in the mortgage, that the defendants pay "all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees" as a prerequisite to reinstatement of the mortgage. The April 30, 1999 letter by the plaintiff's counsel, however, indicates that most, if not all, of the plaintiff's claimed expenses were related to the filing of the foreclosure action. The plaintiff therefore attempted to make the defendants' right to reinstate the mortgage, and to thereby avoid foreclosure, contingent upon payment, in advance, of the very expenses which would be prevented by reinstatement. If payment of the reinstatement amount would reinstate the mortgage, thus precluding the possibility of foreclosure, then the reinstatement amount could not reasonably include the costs of the foreclosure action.
Even where loan documents provide for the payment of attorney's fees or costs, there is an "undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing." (Internal quotation marks omitted.) SKW Real Estate Ltd.Partnership v. Gallicchio, 49 Conn. App. 563, 580-81, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 (1998). Here, the plaintiff has failed to demonstrate that the costs and fees requested are reasonable. On the contrary, from the evidence presented, the expenses appear patently unreasonable because they were only incurred as a result CT Page 11250 of the plaintiff's refusal of the defendant's tender. In any event, there is, at the very least, an issue of fact regarding the reasonableness of the costs and fees.
Furthermore, the Supreme Court case discussed above, Ashburn v.Poulter, supra, 35 Conn. 553, also addressed the issue of whether a debtor's tender of payment must include costs. The court concluded that because service had not yet been made on the debtor, the debtor could not be required to include costs in the tender of payment. "[I]t has always been understood to be law in this state that a debtor might tender the debt without cost after a writ was issued and delivered to the sheriff, and at any time before the actual commencement of the action by serviceupon the defendant." (Emphasis in original.) Id., 557. The Supreme Court, in upholding this principle in another case, stated, "[I]n cases where the amount of the debt should be in dispute, there would be the temptation to use some question arising out of the claim for costs to defeat the tender, and for officers and counsel to claim exorbitant charges, against which the debtor would have no redress by taxation. Thus, and in many other ways which might be suggested, the debtor might be subjected to trouble and expense which would practically destroy his right to tender before suit brought." Studwell v. Cooke, 38 Conn. 549,553 (1871). Therefore, at least to the extent that the costs and attorney's fees claimed by the plaintiff were incurred in connection with the commencement of the present action, the defendants were not required to include them in their tender of payment.
 V CONCLUSION
Although the plaintiff has demonstrated that there is no genuine issue of material, fact as to the elements of its prima facie case, it has failed to show that there are no genuine issues of material fact regarding the four special defenses. On the contrary, the evidence submitted by the parties strongly supports a conclusion that the defendant was entitled to reinstatement of the mortgage by virtue of its tender of payment of the amounts past due. At the very least, there are issues of fact regarding that question.
For all of the reasons set forth above, the plaintiff's motion for summary judgment is denied.
D. Michael Referee Hurley, Judge Trial Referee